# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AARON B. ROBERTS, | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. GLR-14-720 |
| COREY WALKER, et al., | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Pending before the Court is Defendants', Roderick Sowers, Gary D. Maynard, Gregg L. Hershberger, Randy L. Watson, Assistant Warden Jacquelene A. Shank, Captain Robert Wise, Sgt. Robert Dudley, CCMS II Corey Walker, CCMS II Anna Hartle, CCMS II Kelly Easton, Major Paul Ridenour[1], Lt. Ryan Ebersole, and Lt. Brian Reed, Joseph Perry, Tina Stump, John Fountain, Scott Peterson, and Scott Oakley (collectively the "Correctional Defendants"), Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 29) and Defendants', Doni Obitts, RN and Wexford Health Sources, Inc. (hereafter the "Medical Defendants"), Motion to Dismiss (ECF No. 42). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Motions will be granted.

## I. BACKGROUND[2]

While housed in general population at Maryland Correctional Institution - Hagerstown ("MCI-H"),[3] on May 15, 2013, Plaintiff, Aaron B. Roberts, was found guilty of an inmate infraction and sanctioned to ninety days of disciplinary segregation. On June 28, 2013, Case Management Specialist Anna Hartle received a memorandum from the Warden's Office directing her to review

---

[1] Defendant Major Reinhardt's correct spelling is Major Paul Ridenour.
[2] Unless otherwise noted, the following facts are taken from the Complaint and the parties' briefings on the instant motions, and are viewed in the light most favorable to Roberts.
[3] Roberts is currently housed at the Western Correctional Institution ("WCI"). He was transferred to WCI on March 24, 2014.

Roberts's request that he be released early from disciplinary segregation. Hartle recommended that Roberts's time in disciplinary segregation be reduced and that he be returned to general population. Upon notice that he was going to be transferred to general population, Roberts reported anonymous verbal and written threats to his life from members of the Black Guerilla Family gang ("BGF"). As a result, Roberts was removed from disciplinary segregation and assigned to administrative segregation.

On December 4, 2013, the Administrative Segregation Team, responsible for reviewing the appropriate housing assignment of inmates on administrative segregation, conducted a case management assignment review. The Administrative Segregation Team included Defendants Hartle, Walker, and Ebersole. It was determined that claims concerning threats to Roberts's safety could not be substantiated. Further, an inmate on Roberts's "enemy list" was no longer housed in general population and was, therefore, no longer a threat to Roberts. As a result of its investigation, the Administrative Segregation Team recommended that Roberts be returned to general population and the Warden's office approved the transfer. Roberts was returned to general population on December 18, 2013.

Roberts alleges, immediately after being transferred to general population on December 18, 2013, he was struck on the back of the head by unknown inmates while returning to the rec hall from his evening meal, which resulted in significant injury and permanent disfigurement. Roberts reported the alleged assault to Officer James King and he was immediately escorted to the medical unit. Roberts was seen by Nurse Doni Obitts. Nurse Obitts noted a superficial scratch to the back of Roberts's head and noted that the scratch was neither bleeding nor was there swelling or redness.

An Internal Investigative Unit ("IIU") investigation was launched in response to Roberts's request for a case management investigation and inquiry into his December 18, 2013 assault. Sgt. Robert Fagan conducted an investigation into Roberts's assault. Fagan's investigation included an interview with Roberts, a review of letters prepared by Roberts, the medical report, case management

records, and the rec hall video from the night of the alleged assault. Fagan found no evidence to support Roberts's claim that he was assaulted. As a result, the investigation was closed.

Roberts made a number of subsequent requests for intervention and protection from gang violence following the December 18, 2013 alleged attack. Roberts has submitted copies of letters allegedly written and sent to Defendants Easton, Maynard, Hershberger, Stump and Fountain.

Defendant Peterson, a duty officer in the Department of Public Safety and Correctional Services ("DPSCS") IIU, received correspondence from Roberts on December 19, 2013, indicating he had been threatened by fellow prisoners. Peterson conducted a "welfare check." He interviewed Roberts on December 26, 2013. Roberts could not produce threatening notes and was unable to provide the identity of any prisoners who were responsible for threatening him.

On March 10, 2014, Roberts initiated this action pursuant to 42 U.S.C. § 1983 (2012). He alleges Case Management staff improperly removed him from administrative segregation and transferred him to general population, placing his safety at risk. He seeks a declaratory judgment finding Defendants liable in their official and personal capacities for violations of his Eighth Amendment right to be free from cruel and unusual punishment, injunctive relief prohibiting Defendants from housing him in general population and immediately assigning him to long term protective housing, and compensatory and punitive damages in the amount of $25,000.00 per Defendant. Roberts filed an Amended Complaint (ECF No. 11) on April 9, 2014, alleging Defendant Scott Oakley, DPSCS Director of Inmate Grievance Office ("IGO") failed to act with respect to two IGO complaints relevant to this lawsuit. On June 18, 2014, the Correctional Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment. On September 15, 2014, the Medical Defendants filed their Motion to Dismiss. The Motions have been fully briefed and are ripe for consideration.

## II. DISCUSSION

A.    **Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556. "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (alteration in original) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted). The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion. First, that the "parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and, second, "that the parties first be afforded a reasonable opportunity for discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)) (internal quotation marks omitted).

Here, the alternative caption of the Correctional Defendants' Motion and the attached Declaration are sufficient indicia that the Motion might be treated as one for summary judgment. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). Further, the Medical Defendants attached to their Motion to Dismiss an accompanying affidavit and medical report. "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6)

4

motion may be treated as a motion for summary judgment." Gay, 761 F.2d at 177. Because the Defendants submitted and relied upon materials beyond Roberts's Complaint, Roberts was on notice that the Court may treat the Motion as one for Summary Judgment.[4]

Once notified, "summary judgment is appropriate only after 'adequate time for discovery.'" Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Rule 56(d) provides that the Court may deny or continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Fed.R.Civ.P. 56(d). A party opposing summary judgment under Rule 56(d), however, may not simply assert that discovery is necessary; the party must file an affidavit that "particularly specifies legitimate needs for further discovery." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995). "[T]he failure to file an affidavit under Rule [56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)) (internal quotation marks omitted).[5]

Roberts requests unspecified discovery to dispute the Correctional Defendants' contention that he was placed on administrative segregation due solely to the presence of a documented enemy in general population; that the Correctional Defendants were aware of previous incidents in which he was removed from general population due to threats by inmates suspected of being affiliated with BGF; and that the Correctional Defendants did not respond reasonably and appropriately to his request for protective custody. (Pl.'s Memo in Opp'n Ex. F, at 8). Such discovery, however, would

---

[4] Roberts makes reference to the Medical Defendants' medical report in his Opposition to the Correctional Officers' Motion to Dismiss or, in the Alternative, for Summary Judgment. (See Memo. Support Pl.'s Opps'n Mot. to Dismiss or Summ. J. ["Pl.'s Memo in Opp'n"], at 9, ECF No. 44). Thus, it is clear that Roberts knew the Court might consider matters outside the pleading.

[5] While Roberts has failed to file a Rule 56(d) affidavit, given his pro se status, the Court has, nevertheless, considered whether discovery would lead to information necessary to place material facts in dispute.

be insufficient to place material facts in dispute and defeat summary judgment.[6] Cromwell Field Assocs., LLP v. May Dep't Stores Co., 5 F.App'x 186, 189-90 (4th Cir. 2001) (affirming the district court's decision denying a request to continue a motion for summary judgment pending additional discovery where the facts on which the district court relied to decide the case were not in dispute and the facts sought under discovery were immaterial to the summary judgment motion). Accordingly, the Defendants' Motions will be construed as Motions for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (alteration in original).

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

---

[6] See infra note 9.

**B.     Analysis**

As a preliminary matter, Roberts's claim against Oakley for failure to investigate his IGO complaint fails. Roberts has no constitutional right to the establishment of an administrative remedy or other grievance process voluntarily established by the state. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Additionally, Roberts voluntarily withdraws his claim against Joseph Perry. (Pl.'s Memo in Opp'n at 6). Finally, to the extent Roberts names Wexford Health Sources, Inc. (Wexford") as a party to this action due solely to its role as the medical health care provider for DPSCS, he has alleged no facts supporting a claim of supervisory liability on the part of Wexford.[7] Accordingly, Defendants Scott Oakley, Joseph Perry, and Wexford will be dismissed from this action.

Next, "[t]he Eighth Amendment's prohibition against cruel and unusual punishment 'protects inmates from inhumane treatment and conditions while imprisoned.'" Coleman v. Poff, 497 F.App'x 337, 338 (4th Cir. 2012) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996)). To establish cruel and unusual punishment, a prisoner must prove that "the deprivation of [a] basic human need was objectively sufficiently serious, and that subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (alteration in

---

[7] Section 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be affirmatively shown the official acted personally to deprive the plaintiff's rights). A claim based on the doctrine of respondeat superior has no place in § 1983 litigation. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Thus, supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

original) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.)) (internal quotation marks omitted).

To demonstrate that conditions of confinement are sufficiently serious to rise to the level of unconstitutional punishment, a prisoner must produce evidence of either "a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Webb v. Deboo, 423 F.App'x 299, 300 (4th Cir. 2011) (quoting Shakka, 71 F.3d at 166) (internal quotation marks omitted). Here, Roberts Eighth Amendment claim fails because he cannot demonstrate harm or substantial risk of harm that is sufficiently deleterious to satisfy the objective component of his claim.

First, Roberts has failed to provide evidence of a significant personal injury. He alleges he was struck on the back of the head by while returning to the rec hall from his evening meal, on December 18, 2013, which resulted in significant injury and permanent disfigurement. The uncontroverted affidavit of Defendant Doni Obitts, RN, and the accompanying medical report, however, belies the allegations of significant injury. Roberts was examined by Obitts at 6:00 p.m. on the day of the incident. (Memo. Support Mot. Dismiss, Ex. A, at 15 ["Obitts Aff."], ECF No. 42-1). Roberts reported "he got hit," but denied any pain, headache or dizziness. (Id.). Obitts noted a four-centimeter superficial scratch to the back of Roberts's head. (Id.). Bleeding stopped prior to Roberts's arrival at the medical dispensary and no swelling or redness was noted. (Id.). Obitts cleaned the area and applied a bandaid. Id. While Roberts denies that Obitts examined him, a photograph of the wound supports Obitts' finding as to the superficial nature of the wound. (Mot. Dismiss or Summ. J. Ex. 1, at 59 ["Photograph"], ECF No. 29-3).

Next, Roberts has similarly failed to provide evidence demonstrating a substantial risk of serious harm resulting from his placement in general population. Roberts alleges he began receiving anonymous verbal and written threats from members of BGF. He further alleges case management

staff initially took appropriate preventive action to ensure his safety by placing him on administrative segregation, but then abruptly approved his transfer to general population without conducting a thorough, comprehensive, and impartial investigation. Roberts fails, however, to offer any evidence of a substantial risk of serious harm, by declaration or affidavit or any other materials in the record demonstrating a credible threat to his safety.

An Administrative Segregation Team investigated Roberts's claims that he was being threatened by BGF. (Mot Dismiss or Summ. J. Exs. 2-4, ECF Nos. 29:4-6). As a result of the case management review, it was determined that Roberts's reports of threats to his safety could not be substantiated. (Id.). Moreover, after the alleged assault, an IIU investigation found no evidence to support Roberts's claim that he was assaulted. (Mot Dismiss or Summ. J. Ex. 1, at 8, ECF No. 29-3). While Roberts zealously attacks and disputes the thoroughness of the investigations into his allegations of threats, he sets forth no evidence substantiating such threats.[8] Thus, because Roberts has failed to demonstrate either a serious injury, or that his conditions of confinement exposed him to a substantial risk of harm, his constitutional challenge fails.[9]

To the extent Roberts's Eighth Amendment claim is based on a deprivation of medical attention, it fairs no better. It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104, (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). Questions of medical judgment are not subject to judicial review, and neither

---

[8] In support of his allegation of known threats to his safety, Roberts submits a list of documented enemies and asserts the prisoners listed are confirmed or suspected BGF affiliates. (Pl.'s Memo in Opp'n at 1). Roberts, however, fails to provide any evidence that the prisoners on his enemies list were housed in general population at the same DPSCS facility such that they posed a credible threat to his safety.

[9] Because Roberts cannot satisfy the objective component of his claim, the Court need not address the Correctional Defendants' nonmutual collateral estoppel defense with respect to the subjective component of his claim.

malpractice nor negligent diagnosis states a constitutional violation under the Eighth Amendment. <u>Id.</u> at 105–06.

Even applying these standards liberally, Roberts's claim against Obitts, in her capacity as a treating nurse, is not cognizable under § 1983. There is no evidence in the record demonstrating that the alleged assault resulted in anything other than a superficial scratch. (<u>See</u> Photograph). Obitts's uncontroverted affidavit and accompanying medical report demonstrate that she cleaned the scratch and applied a bandaid. (<u>See</u> Obitts Aff.). Roberts argues the scratch caused him severe pain, loss of sleep because of his inability to lie comfortably, and a permanent scar. Roberts, however, fails to support this assertion by declaration or affidavit or any other materials in the record demonstrating that he sought medical care associated with the alleged aggravated symptoms. Thus, because Roberts has failed to demonstrate a serious medical need, his constitutional challenge fails.

### III. CONCLUSION

For the aforementioned reasons, the Defendants' Motions, construed as Motions for Summary judgment, are GRANTED.[10] Defendants Scott Oakley, Joseph Perry, and Wexford are DISMISSED from this action; JUDGMENT is entered on behalf of all remaining Defendants. A separate Order will follow.

<u>March 4, 2015</u>                                         /s/
Date
                                                           _____
                                                           George L. Russell, Jr.
                                                           United States District Judge

---

[10] Having found no constitutional violation, the Court need not address the Correctional Officers' defense of qualified immunity.